EDWIN M. CHAFFEE, TRUSTEE OF HORACE H. DAY, PLAINTIFF IN ERROR, *v.* NATHANIEL HAYWARD. HORACE H. DAY, PLAINTIFF IN ERROR, *v.* NATHANIEL HAYWARD.

By the judiciary act of 1789, no civil suit shall be brought against an inhabitant of the United States by an original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ.

This provision of law is not changed by any subsequent process act, or by the law giving jurisdiction to Circuit Courts in patent cases, without regard to citizenship.

Therefore, where a suit was commenced for an infringement of a patent right, and process was served by attaching the property of an absent defendant, this was not sufficient to give the court jurisdiction.

The defect of an irregular citation (being signed by the clerk of the court, and not by the judge who allowed the writ of error) is cured by an appearance in this court; so that a motion to dismiss the writ, when made at the term succeeding that at which the appearance was entered, comes too late.

THESE cases were brought up, by writ of error, from the Circuit Court of the United States for the district of Rhode Island.

At an early day of the term, *Mr. Pitman,* counsel for the defendant in error, moved to dismiss the writs of error upon the ground stated below, and filed the following affidavit in support of the motion:

SUPREME COURT OF THE UNITED STATES, NO. 51; DEC. TERM, 1857.

*Edwin M. Chaffee, Trustee of Horace H. Day, Plaintiff in Error,*
*v. Nathaniel Hayward.*

The defendant in error in this cause moves that this cause be dismissed, the citation herein having been signed by the clerk of the Circuit Court, and not by the judge, as required by law. By his attorney,        JOSEPH S. PITMAN.

I, Joseph S. Pitman, of the city and county of Providence, and State of Rhode Island, &c., attorney at law, on oath say, that I am and have been associated with Charles S. Bradley, Esq., in the defence of the above cause; that he is the junior counsel in said cause; that he left the city of Providence for Europe on the first or second day of December, 1856; that we

had no consultation respecting the management of said cause before his departure, Mr. Bradley expecting to return by the first of March, 1857; that after his departure I caused an appearance to be entered in said cause, and did not file a motion for the dismissal of said cause at the last term, because I did not wish to decide on the expediency of that motion without consultation with him; that I expected he would return in season for such consultation, either before the court adjourned, or that I should have opportunity to make that motion after consultation with him at an adjourned term of this court, which I supposed would be held as at the December term, 1856; that to my surprise this court adjourned about the seventh day of March, and the opportunity was lost, as Mr. Bradley did not return to this country until the twenty-fourth of March, 1857.

JOSEPH S. PITMAN.

RHODE ISLAND DISTRICT, *ss.*

*Clerk's Office, Circuit Court of the United States.*

On this nineteenth day of December, A. D. 1857, came the above-named Joseph S. Pitman, and made oath that the foregoing statements are true.   Before me.

[SEAL.] Witness my hand and official seal, at Providence.

HENRY PITMAN,
*Clerk Circuit Court U. S., R. I. Dist.*

Upon which motion Mr. Chief Justice TANEY delivered the opinion of the court.

In this case, a judgment in favor of the defendant in error was rendered in the Circuit Court of the United States for the district of Rhode Island, at its June term, 1856.   The plaintiff sued out a writ of error on the 27th of October, 1856, returnable to the December term of this court then next following; but the citation to the defendant was signed by the clerk of the court, and not by the judge who allowed the writ of error.

In pursuance of this writ of error, the record was filed here and the case docketed on the 24th of November, 1856; and on the 4th of December the defendant appeared by counsel in this court.

A motion has been made at the present term to dismiss the case, because the citation is signed by the clerk and not by the judge.

The citation is undoubtedly irregular in this respect, and the defendant in error was not bound to appear under it.   And if a motion had been made at the last term, within a reasonable time, to dismiss the case upon this ground, it would have

been dismissed. But the appearance of the party in this court, without making a motion to dismiss during the first term, is a waiver of any irregularity in the citation, and is an admission that he has received notice to appear to the writ of error. This point was decided in the cases of McDonogh v. Millaudon, 3 How., 693; United States v. Yulee, 6 How., 605; and Buckingham et al. v. McLean et al., 13 How., 150. And these cases have been recognised and affirmed in the case of Carroll et al. v. Dorsey et al., decided at the present term.

Indeed, any other rule would be unjust to a plaintiff in error, and is not required for the protection of the defendant. The latter is not bound to appear, unless he is legally cited, except for the purpose of moving to dismiss. He knows, or must be presumed to know, whether the notice which the law requires has been served on him or not. And if the objection is made at the first term, the plaintiff, by a new writ and proper citation, might bring up the case to the succeeding term. But if the defendant does not, by motion at the first term, apprise him of the irregularity of his proceeding in this respect, and of his intention to take advantage of it, the plaintiff is put off his guard by the defendant's appearance; and if the motion is permitted at the second term, he will be delayed an entire year in the prosecution of his suit, whenever it is the interest of a defendant in error to delay and harass his adversary.

An affidavit has been filed by one of the counsel for the defendant in error, stating that he is the junior counsel in the case, and that he did not make the motion at the last term, because the senior counsel was absent in Europe, and the deponent did not wish to decide on the expediency of the motion to dismiss without consulting him; that he expected him to return before the term ended, but the court adjourned sooner than he anticipated, and the senior counsel did not return until the court had finally adjourned to the next term.

The facts stated in this affidavit cannot influence the decision of the motion. The absence of one or of all the counsel employed by one party, in pursuit of other business, furnishes no ground for delaying a case in this court, without the consent of the adverse party.

The motion comes too late, and is therefore overruled.

DAY
*v.*          } No. 52.
HAYWARD.

The motion to dismiss in this case stands on the same ground with that of Chaffee, trustee of Day, v. Hayward, just disposed of; and must, for the reasons assigned in that case, be also overruled.

When the case came up for argument, it was submitted on printed argument by *Mr. Jenckes* for the plaintiff in error, and argued orally by *Mr. Bradley* and *Mr. Pitman* for the defendant.

*Mr. Jenckes* made the following points:

*Point I.* The Circuit Court for the district of Rhode Island, having jurisdiction of the subject-matter, may issue its process in the same form, and the process itself may be served in the same manner, as process issuing from the Supreme Court of that State for any cause of action within its common-law jurisdiction.. (Process Act of May 8th, 1792, sec. 2, Stat. at L., I, 276.)

If the service was good by the laws of that State as they were at the date of the passage of the process act, then it is good under the laws of the United States.

1. The form of the writs in these cases and the modes of proceedings to bring the defendant before the court, were strictly in accordance with the law of Rhode Island. (Public Laws of Rhode Island, Digest of 1844, pp. 110, 113, 115.)

The statute law of Rhode Island regulating attachments on original writ was the same in 1789 as in 1855. (See Digest of 1767, p. 12; Digest of 1798, p. 201.) In all the statutes authorizing attachments of personal property, the same provision is found which is contained in the Digest of 1844, p. 113, sec. 3: "When any attachment is made in manner aforesaid, the same shall be sufficient to bring the cause to trial." Neither in the case of attachment of personal property, nor of real estate, (p. 115, sec. 11,) is there any provision made for personal service on the defendant. In the case of personal estate, a copy of the writ must be left at the defendant's usual place of abode, (p. 113, sec. 3,) and, in the case of real estate, with the person in possession of the land, and with the clerk of the town where the land lies, (p. 115, sec. 11.) Such service (sec. 3, p. 113) is expressly declared sufficient to bring the cause to trial. In case of real estate, the execution runs against the property attached, (sec. 11, p. 115.)

2. The above-cited statutes of Rhode Island show that the service of the process in a case in the Supreme Court of that State, made in the same manner as in this case, would have been sufficient to compel the attendance of the defendant, for the purpose of giving that court jurisdiction of the cause, and to form the basis of a judgment by default in case of his non-appearance.

*Point II.* The eleventh section of the judiciary act of 1789 does not prohibit the taking of jurisdiction over this cause.

The provisions of that section apply to the cases of jurisdiction founded on the citizenship of the parties. There is no reference in that section to suits at common law in which the Circuit Courts have jurisdiction over the parties by reason of their exclusive jurisdiction over the subject-matter. Most of the cases decided under that statute were cases where the jurisdiction depended solely on the citizenship of the parties, and were within the letter of the prohibition. (Picquet *v.* Swan, 5 Mason, 561; Richmond *v.* Dreyfous, 1 Sumner, 131; Toland *v.* Sprague, 12 Peters, 300.)

The case of Day *v.* The Newark India Rubber Manufacturing Company, 1 Blatchford, 628, was rightly decided, inasmuch as the mode of proceeding adopted in the commencement of that suit had not been adopted by the Circuit Court in New York; and it is submitted that it was not necessary to construe the eleventh section of the judiciary act as extending to a class of cases not referred to in that statute, and in which the jurisdiction does not depend on citizenship.

It is submitted that the Circuit Court in Rhode Island takes jurisdiction of cases under the patent laws, in the same manner that the Supreme Court of that State takes jurisdiction of any transitory action, and may use the same process to compel the appearance of the defendant, that could have been used by the State court at the date of the passage of the process act.

An objection to this view, taken by Mr. Justice Story in Picquet *v.* Swan, is, that the process act was not intended to enlarge the jurisdiction of the Circuit Courts as defined by the judiciary act. This objection is not tenable in a patent cause, because the jurisdiction of the court is enlarged by the patent laws, and the process acts are to be applied for the purpose of carrying into effect the jurisdiction so conferred, as well as that founded on citizenship.

*Point III.* This is a case of attachment of specific property, real and personal, which, by the Rhode Island statute at the date of the process act, is made a sufficient service to bring the cause to trial, and therein differs from all the cases decided under the eleventh section of the judiciary act, which were cases of foreign attachment. In Picquet *v.* Swan there was an attempt to attach the real estate of the defendant, but this attempted service was declared, by Judge Story, "defective and nugatory." The statute of Rhode Island in effect declares that a defendant is to be found in that State for the purposes of the jurisdiction of its courts, by his visible personal and real property, which can be seized and levied on by the sheriff. The decisions of the courts of the United States, in cases where

the jurisdiction rests exclusively on citizenship, declare that a defendant is not found in a district where one of his debtors resides. There is no conflict in maintaining both propositions.

If specific property cannot be attached when the owner resides out of the district, then an assignee under the bankrupt laws would be deprived of his remedy against a debtor of the bankrupt, in the Circuit Court of the district where his property might be found, although that court has jurisdiction of the subject-matter of the suit.

So, also, it would be impossible to commence a suit at law against an American residing abroad, for infringing a patent for a product by sales in this country, although he might have here warehouses full of goods.

*Point IV.* If the dictum in Toland *v.* Sprague, "that even in case of a person being amenable to process *in personam,* an attachment against his property cannot be issued against him, except as a part of or together with process to be served upon his person," is to be established as a rule for the service of process from the courts of the United States in all cases, then it is not possible to obtain security for a debt by attachment on original process from the Circuit Court in the district of Rhode Island.

An attachment cannot be made on original writ, if the debtor be within the marshal's precinct. He can attach goods and chattels only when he "cannot find the body of the defendant within his precinct," (Dig. of 1844, p. 113, sec. 3;) and real estate can be attached only when "the defendant's body or personal estate cannot be found within the State," (p. 115, sec. 11; Dig. of 1857, pp. 438, 439, secs. 4, 5, 15.) No provision is made in either case for personal service on the defendant. A copy of the writ is to be left at his last and usual place of abode, if he has any in the State, and, if not, notice is to be given by advertisement. But the form of the writ is such that if personal service can be made, no attachment can be made, and, when an attachment is made, no personal service is required or expected.

Many judgments have been rendered in the Circuit Court of Rhode Island, in suits commenced by attachment against citizens of Rhode Island who have been absent, in the belief that the process of that court was to be served like the process of the State courts, and with like effect. Property has been sold, and titles to real estate have passed, upon sales made on executions issued on judgments obtained by default. A decision against the validity of such attachments would not only unsettle the titles to property thus acquired, but would deprive suitors in the Circuit Court of the United States for that dis-

trict of the most valuable portion of their remedial process against their debtors.

The counsel for the defendant in error referred to the following authorities:

No civil suit can be brought in a Circuit Court against the defendant in any district whereof he is not an inhabitant, or is not found at the date of the alleged service of the writ. (Judiciary act of 1789, sec. 11, Stat. at Large, vol. 1, p. 79; Hollingsworth v. Adams, 2 Dallas, 396; Pollard v. Dwight, 4 Cranch, 424; Picquet v. Swan, 5 Mason, 35, 48, 50; Richmond v. Dreyfous, 1 Sumner, 131, 132; Harrison et al. v. Rowan et ux., 1 Pet. C. C. R., 489; Toland v. Sprague, 12 Pet., 300, 328, 330; Com. and R. R. Bank of Vicksburg v. Slocumb et al., 14 Pet., 60; Levy v. Fitzpatrick, 15 Pet., 171; Louisville R. R. Co. v. Letson, 2 How., 556, 557; Herndon v. Ridgway, 17 How., 424; Sadlier v. Fallon, 2 Curtis, 579, 581.)

The law has been equally well settled in relation to service of process in patent suits. (Horace H. Day v. The Newark India Rubber Manufacturing Co., 1 Blatch., 629; Saddler et al. v. Hudson et al., 2 Curtis, 6.)

Mr. Justice CATRON delivered the opinion of the court.

The question of law decided below, and which we are called on to revise, arises on the following facts: On the twenty-second day of October, 1855, the plaintiff in error sued out a writ in the Circuit Court of the United States for the Rhode Island district, against Nathaniel Hayward, styling him as "of Colchester, in the State of Connecticut, commorant of Providence, in the State of Rhode Island," for the recovery of damages alleged to have been sustained by the plaintiff in error, by reason of an alleged infringement of a patent right claimed by said plaintiff.

On the same day, the marshal of the Rhode Island district made return on the writ, that "for want of the body of the within defendant to be by me found within my district, I have attached," &c., (enumerating certain real estate lying in the city of Providence, in the State of Rhode Island,) and a still further return of having made further service of the writ, by attaching all the personal estate of the defendant in the India rubber factory of Hartshorn & Co., and in the store or warehouse No. 7, Dorrance street stores, &c., and "have left true and attested copies of this writ, with my doings thereon, with the city clerk of the city of Providence, and with John Sweet and William E. Himes, they being in possession of the premises, the defendant having no known place of abode within my district."

At the November term of the court, a declaration was filed,

containing the allegations of citizenship of the plaintiff and defendant, and that the defendant was commorant of Providence, as in the writ; and at the same term the defendant, in his own proper person, pleaded to the jurisdiction of the court, that he was at the time of the pretended service of the writ, and is, an inhabitant of the district of Connecticut, and not an inhabitant of the district of Rhode Island, nor was he at the time of the pretended service of the writ within the district of Rhode Island; praying the judgment of the court, whether it can or will take cognizance of the action against him.

To this plea the plaintiff, by his attorney, filed a general demurrer, on which the cause was heard, and at the June term the court overruled the demurrer and dismissed the case for want of jurisdiction; upon which, the plaintiff sued out a writ of error.

By the eleventh section of the judiciary act of 1789, it is provided, "That no civil suit in a Circuit or District Court shall be brought against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ."

It has been several times held by this court as the true construction of the foregoing section, that jurisdiction of the person of a defendant, (who is an inhabitant of another State,) can only be obtained, in a civil action, by service of process on his person, within the district where the suit is instituted; and that no jurisdiction can be acquired by attaching property of a non-resident defendant, pursuant to a State attachment law. The doctrine announced to this effect, in the case of Toland *v.* Sprague, in 1838, (12 Peters, 327,) has been uniformly followed since, both by this court and at the circuits. (15 Pet., 171; 17 How., 424.)

It is insisted, however, for the plaintiff, that these rulings were had in cases arising where the jurisdiction depended on citizenship; whereas, here the suit is founded on an act of Congress conferring jurisdiction on the Circuit Courts of the United States in suits by inventors against those who infringe their letters patent, including all cases, both at law and in equity, arising under the patent laws, without regard to citizenship of the parties or the amount in controversy, and therefore the eleventh section of the judiciary act does not apply, but the process acts of the State where the suit is brought must govern; and that the act of Congress of May 8th, 1792, so declares.

The second section of that act provides, that the forms and modes of proceeding in suits at common law shall be the same as are now used in the Federal courts, respectively, pursuant

to the act of 1789, ch. 21, known as the process act of that year.

This act (sec. 2) declares, that until further provision shall be made, and except where by this act "*or other statutes of the United States is otherwise provided,*" the forms of writs and executions, and modes of process in suits at common law, shall be the same in each State, respectively, as are now used or allowed in the Supreme Court of the same. This was to be the mode of process, unless provision had been made by Congress; and, to the extent that Congress had provided, the State laws should not operate.

Now, the only statute of the United States then existing, regulating practice, was the judiciary act of 1789, (ch. 20,) which is above recited. The eleventh section is excepted out of and stands unaffected by the subsequent process acts, and is as applicable in this case as it was to those where jurisdiction depended on citizenship. It applies in its terms *to all* civil suits; it makes no exception, nor can the courts of justice make any.

The judicial power extends to all cases in law and equity arising under the Constitution and laws of the United States, and it is pursuant to this clause of the Constitution that the United States courts are vested with power to execute the laws respecting inventors and patented inventions; but where suits are to be brought is left to the general law: to wit, to the eleventh section of the judiciary act, which requires personal service of process, within the district where the suit is brought, if the defendant be an inhabitant of another State.

This case, and that of Day against Hayward, depend on the same grounds of jurisdiction, and were both correctly decided in the Circuit Court; and the judgment in each is affirmed.