### JONES *v.* ANDREWS.

1. Allegation of citizenship is sufficiently made when it appears fairly, and in such a way as to leave no room for reasonable doubt, from the bill or declaration, of what States the respective parties are citizens.
2. By the Judiciary Act of 1789, in a case where jurisdiction of the Circuit Court depended on citizenship, every defendant must have resided, or been served with process, in the district where the suit was brought; but by the act of 1839 this is not necessary: a non-resident defendant may either voluntarily appear, or, if not a necessary party, his appe..r-ance may be dispensed with.
3. Appearing by counsel and moving to dismiss the bill for want of juris-diction and also for want of equity, is a waiver of a non-resident's privilege, and amounts to a voluntary appearance.
4. A bill for injunction to restrain proceedings of garnishment against the complainant's property instituted in the Circuit Court, and also praying the benefit of a set-off against the garnishing creditor's demand, is not an original suit, but is a defensive or supplementary suit, in which the jurisdiction of the court does not depend on the citizenship of the parties, but on the cognizance of the original case.

Appeal from the Circuit Court for the Western District of Tennessee; the case being thus:

The Judiciary Act of 1789* gives the Circuit Courts jurisdiction where the suit is between a citizen of the State where the suit is brought and a citizen of another State; and enacts that no civil suit shall be brought in them against an inhabitant of the United States by original process in any other district than that whereof he is an inhabitant, or in which he may be found at the time of serving the writ.

By the act of February 28, 1839,† it is, however, enacted

"That where in any suit in law or equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within, the district where the suit is brought, *or shall not voluntarily appear thereto*, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit between the parties who may be properly before it; but the judgment or decree rendered therein, shall not conclude or prejudice other parties not regularly served with process, or *not voluntarily appearing to answer*," &c.

These provisions as to jurisdiction being in force, one Joseph J. Andrews, owner of a hotel in Memphis, leased it for five years, from 1st of January, 1859, to P. Reed and H. W. Bryson; these last giving their notes for the amount of the rent. After Reed and Bryson had possession for some time, they sub-let it to a certain Stephen M. Jones, at the same rent which they had paid, and took his notes to themselves for the same sum that they were bound to pay Andrews by their own. The troubles of the rebellion coming on, matters got disarranged. Jones, *according to his own account*, having left Memphis, temporarily got shut out of the town by the Federal army, and during this enforced absence was dispossessed of the hotel and greatly injured by Andrews, who seized and sold very valuable personal property of his left on the premises. However these facts

---

　　* Sec. 11.　　　　　　　　† Sec. 1, 5 Stat. at Large, 321–2.

(which Andrews denied) might have been, it was admitted that the rent not being long paid in form, Andrews sued Reed and Bryson on their notes given to him, and got judgment by default. On this judgment so got, he sued out a writ of garnishment for the professed purpose of seizing in their hands the notes of Jones. Hereupon Jones filed a bill in the same court, the court below, alleging that Reed and Bryson had transferred *his* notes (Jones's), given to them for the sub-lease, to Andrews in payment of their own notes to him for the lease in chief; that Andrews had thus no claim against Reed and Bryson when he sued them; that the judgment recovered by him against them was by collusion, and was contrived for the purpose of garnisheeing his, Jones's, notes, pretended to be in their hands, and that all this was done to avoid on the part of Andrews a direct suit against him, the complainant, Jones, by reason of the fact that as against Andrews, he, the complainant, Jones, had a good defence to the notes and a set-off (on account of the seizure and sale of his furniture, and expulsion of him from the premises), that would largely exceed the amount of the notes. His bill accordingly prayed for an injunction against the garnishee proceedings, for the delivery up of his notes, and for the establishment of his set-off against Andrews.

The suit was entitled at the beginning,

"Stephen M. Jones, *citizen and resident of* Richmond County, *Georgia,*

vs.

Joseph Andrews, *citizen and resident of* City and County and *State of New York;* P. Reed and H. W. Bryson, *both citizens and residents of* Shelby County, *Tennessee.*"

And the *prayer* of the bill began thus:

"The premises considered, complainant prays that Joseph Andrews, *a resident and citizen of the* city, county, and *State of New York,* and the said Reed and Bryson, both of *whom are residents of* Shelby County, in *the State of Tennessee,* be made parties defendant, by due process and publication," &c.

Andrews (the resident of New York) was not served with process; but, as the record stated,

"Comes and moves the court here to dismiss the bill of the plaintiff for want of jurisdiction, apparent on the face of it;" and for causes for such motion showed (among others),

(1.) The bill does not aver the citizenship of the plaintiff, nor does it show such facts in regard to the citizenship or residence of the defendant as gives the court jurisdiction.

(2.) The plaintiff shows by his bill that he has an adequate remedy at law.

The court below dismissed the bill for want of jurisdiction over the parties, as well as for want of equitable jurisdiction over the subject-matter of the bill; but without prejudice to the right of the complainant to institute proper proceedings to assert his rights. And from the decree of dismissal, this writ was taken.

*Messrs. Albert Pike and R. W. Johnson, in support of the action of the court below, in dismissing the bill for want of jurisdiction over the parties,* contended on this point:

1st. That the citizenship of the parties was not sufficiently alleged in the bill. That a mere incidental and sidewise mention of citizenship in a caption of the bill—the only presentation of citizenship of all the parties here—was no averment or allegation of citizenship; that it could not be regarded as traversable, or an allegation for the falseness of which the party thus incidentally mentioning it would be responsible.

2d. That, if sufficiently alleged, the court had no jurisdiction over Andrews, the principal defendant, who was a citizen of New York, and not a citizen of Tennessee, where the suit was brought. That under the Judiciary Act of 1789, it was certain that if there were more than one plaintiff, or more than one defendant, the Circuit Court could not take jurisdiction unless each of the parties was competent to sue or liable to be sued there; and that the act of February 28, 1839, wrought no change in the jurisdiction of

the court, as respects the character of parties; that it only obviated the difficulties arising from inability to join or serve those, of several defendants, who might not reside or be found within the district, or should not choose voluntarily to appear.

*Mr. P. Phillips, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

On the question of jurisdiction over the parties, the appellees contend, 1st. That the citizenship of the parties was not sufficiently alleged in the bill.   2d. That, if sufficiently alleged, the court had no jurisdiction over Andrews, the principal defendant, who was a citizen of New York, and not a citizen of Tennessee, where the suit was brought.

Although the allegation of citizenship is not made in precise and technical form, we consider it sufficiently explicit to sustain the jurisdiction of the court, if the citizenship disclosed by the allegation does not displace that jurisdiction.   It is more explicit than the allegation in the case of *Express Company* v. *Kountze Brothers,*\* which was sustained by the court.   All that is necessary is, that it fairly appear by the bill of what States the respective parties are citizens. In this case the form of the allegations leaves no room for reasonable doubt.

The other exception, that Andrews, the principal defendant, was not a citizen of the State where the suit was brought, is entitled to more weight.   Though the Constitution declares that the *judicial power* of the Federal government shall extend to controversies between citizens of different States, which would embrace the case before us (the plaintiff being a citizen of Georgia, and Andrews a citizen of New York), yet Congress has not established any *court*, except the Circuit Court, to take cognizance of such cases; and, by the Judiciary Act of 1789, which establishes that court, Congress only invested it with jurisdiction of cases where the suit is

---

\* 8 Wallace, 342.

between a citizen of the State where the suit is brought, and a citizen of another State,* and moreover declared that no civil suit should be brought before said court against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. The case is certainly not within the purview of this statute. The suit is brought in West Tennessee, and neither Jones, the complainant, nor Andrews, the defendant, is a citizen of that State. Besides, the suit is brought against Andrews in a district of which he is not an inhabitant, and in which he was not found at the time of serving the writ. Under the act of 1789, and the ruling of the early cases, the court would, *primâ facie,* be without jurisdiction. According to those cases the plaintiff, or each of the plaintiffs, if more than one, must be able to sue each of the defendants, if more than one.

But the act of February 28, 1839, by implication, confers jurisdiction over non-residents of the district where the suit is brought, if they voluntarily appear therein. The suit can proceed against them if they voluntarily appear, or without them if they are not necessary parties. If, however, they are necessary parties, and do not voluntarily appear, the difficulty remains the same as before the act of 1839 was passed.† In this case Andrews *was* a necessary party, and he was not a resident of the district, and was not served with process, but he did voluntarily appear. It is true that as soon as he appeared, he moved a dismissal of the bill on two grounds, (1.) That it did not show such facts in regard to the citizenship or residence of the defendants as to give the court jurisdiction. (2.) That it contained no equity. Whether, if he had made the motion on the first ground alone he would have waived his personal exemption, it is not necessary to decide. His moving to dismiss for want of equity was clearly a waiver; and he was properly required to answer the bill. After this the question of jurisdiction

---

\* § 11.          † Tobin *v.* Walkinshaw, 1 McAllister. 26.

over the person was at an end, and the decree of the Circuit Court, dismissing the bill for want of jurisdiction, must be reversed.

But the case is stronger than this. The jurisdiction of the court did not depend on the residence or citizenship of the parties. The suit is, in its nature, not an original but a defensive or supplementary suit, like a cross-bill, or a bill filed to enjoin a judgment of the same court. The bill is filed for an injunction against the garnishee proceedings under the suit at law for the delivery up of the complainant's notes, and for the establishment of his set-off against Andrews. This is, in substance, its character, and if the facts charged furnish a sufficient ground of equity for the relief asked, as to which the court refrains from expressing any opinion, the complainant had a right to file it against the defendants, and the court had a right to take cognizance of it as a defensive or supplementary proceeding, growing out of, and having direct reference to, the proceedings of the defendants in the same court against him. The case, in this respect, as before said, is analogous to that of a cross-bill or bill of review, or a bill for injunction against a judgment at law in the same court, of which the court has jurisdiction irrespective of the residence of the parties.* As to bills for injunction against judgments at law rendered in the same court, Justice Story, in *Dunlap* v. *Stetson*, says: "I believe the general, if not universal, practice has been, to consider bills of injunction upon judgments in the Circuit Courts of the United States, not as original, but as auxiliary and dependent suits, and properly sustainable in that court which gave the original judgment, and has it completely under its control. The court itself possesses a power over its own judgments by staying execution thereon; and it would be very inconvenient if it did not possess the means of rendering such further redress, as equity and good conscience required."

---

* Logan *v.* Patrick, 5 Cranch, 288; Simms *v.* Guthrie, 9 Id. 25; Clarke *v.* Mathewson, 12 Peters, 164; Dunlap *v.* Stetson, 4 Mason, 349.

Let the decree of the Circuit Court be REVERSED, and the cause remitted for further proceedings, each party to pay his own costs on this appeal.

DECREE ACCORDINGLY.