## WEBB & Another *v.* BARNWALL & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA.

Argued December 17, 1885.—Decided January 4, 1886.

The cause of action in a suit in equity by the holder of an equitable title to
real estate to restrain the owner of the legal title from enforcing a judg-
ment in ejectment against him, and to compel the conveyance of the legal
title to the owner of the equitable title, accrues on the entry of final judg-
ment in the suit at law.

This bill of complaint brought by Amanda Sterling and her
four sons against Barnwall and Gaynor, as assignees in bank-
ruptcy, was dismissed on demurrer, solely, as appeared from
the opinion of the circuit judge, because the suit was barred by
the limitation of suits by or against assignees in bankruptcy
found in section 5057 of the Revised Statutes, to wit:

"No suit, either at law or in equity, shall be maintainable in
any court, between an assignee in bankruptcy and a person
claiming an adverse interest, touching any property or rights
of property transferable to or vested in such assignee unless
brought within two years from the time when the cause of
action accrued for or against such assignee."

The bill set out that on the 5th day of February, 1873,
Robert W. Smith was the owner of certain real estate in the
town of Selma, in the bill fully described, and on that day he
and his wife, Sarah, conveyed the same to Cary W. Butt in
trust for the use and benefit of said Robert W. Smith and
Charles Walsh; that afterwards said Walsh and Smith, being
indebted to Edwin A. Glover, in the sum of $20,000, caused the
trustee, Butt, to convey this real estate, in which they had the
sole beneficial interest, to said Glover, who received the same
in satisfaction of the debt August 31, 1873; that Glover there-
upon entered into possession of said property, and that he and
his devisees have retained such possession ever since; that, by
the will of Glover, who died in 1874, the real estate in question
was devised to Amanda Sterling and her sons, the complainants.

The bill then alleged that Walsh and Smith were members of a copartnership with others under the name of Walsh, Smith & Co., which owed the debt to Glover already mentioned as the consideration of the conveyance to him by Butt, the trustee; that said partnership and the individual members thereof, including Walsh and Smith, were declared bankrupts by the proper court on June 12, 1874, and that Henry W. Barnwall and William E. Gaynor were appointed assignees in said proceeding, and all the estate, both real and personal, of said bankrupts, was by the register duly assigned to them. The bill proceeded to show that these assignees instituted an action of ejectment against complainants, who were in possession of the land under the will of Glover, to recover that possession. This suit was begun in the District Court of the United States for the Middle District of Alabama in October, 1876. A judgment was rendered against complainants, which was affirmed on appeal to the Circuit Court, December 19, 1877. Complainants alleged that the plaintiffs in that suit recovered on the ground that the legal title, which controls in a court of law, never was in Butt, the trustee, but by the statute of uses vested immediately in the said Walsh and Smith.

The bill then alleged that while the complainants might not have had the legal title, and so could not successfully defend the action at law, they had a perfect and just title in equity, which, in this suit, they asked the court to protect. They, therefore, prayed for a decree to compel defendants to convey to them the strict legal title which they held, and for an injunction against them in regard to the judgment, which they asked might be perpetual.

The bill was filed August 1, 1881, within fifteen months after final judgment in the action of ejectment.

*Mr. William E. Earle* (*Mr. H. A. Herbert* was with him) for appellants.

*Mr. D. S. Troy* and *Mr. H. C. Tompkins* for appellees, submitted on their brief. The words of the statute set up by the

demurrers are plain: "No suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest touching the property and rights of property aforesaid in any court whatsoever, unless the same shall be brought within two years from the time the cause of action shall have accrued for or against such assignee." As applicable to the case at bar, the statute expressly bars all suits in equity against the assignee, by any person claiming an adverse interest in or to the property or rights of property of the bankrupt, unless such suit is brought within two years from the time the cause of action shall have accrued. That which is barred is any suit touching the property, or rights of property, of the bankrupt; the time after which such suit is barred is two years after the cause of action accrues. There can be no doubt that this is a suit in equity touching the rights of property of the bankrupts, and it is by one claiming an adverse interest. It is for specific performance of a contract and to enjoin proceedings at law; the first might have been instituted over eight and the latter nearly five years prior to the filing of the bill in this cause, so, in no aspect of the case can the cause of action be said to have accrued within two years before its commencement. *Goodlet* v. *Hansell*, 66 Ala. 151; *Brewer* v. *Brewer*, 19 Ala. 481; *Pollack* v. *Gilbert*, 16 Geo. 398.

The purpose of the statute was to speedily quiet all titles to the property passing to the assignee, to enable him to sell it relieved of all doubt about the soundness of such title, and thereby realize its full value, and without delay distribute the proceeds among the creditors. To accomplish these ends this court has always given to the statute a liberal construction in favor of the bar. By this, no injustice is done to claimants of property, only a little greater diligence is required of them; ample time is given them in which to assert their rights; if they fail to do so they themselves are alone to blame. The policy of a law cannot be disregarded because apparent injustice may be done those who negligently fail to assert their rights within the time allowed by law. *Jenkins* v. *International Bank*, 106 U. S. 571; *Doe* v. *Hyde*, 114 U. S. 247.

MR. JUSTICE MILLER delivered the opinion of the court. After stating the facts in the language above reported, he continued:

The Circuit Court treating the bill as an original bill, and as the commencement of a new and independent suit, held that the period of limitation of such suits against the assignees began to run at the date of their appointment in 1874. The two years had, therefore, long been passed and the claim was barred.

But if we assume, as appellants argue, that the occasion for a suit in equity did not arise until the final judgment at law, then the bill in this case was in time.

We think the latter is the sound rule. Complainants were in possession under what they supposed to be a good title, until they were evicted, or their title held to be insufficient; they had no occasion to seek to establish their title by a suit in equity, and such a suit they brought within the time of the statute after they ascertained that it was necessary to protect their possession.

But if this were not so clear, it must be held in the courts of the United States, under previous decisions of this court, that the present bill in equity to enjoin the judgment at law, obtained on the mere legal title, while the equity is in the other party, is a continuation of that suit, and, therefore, the proceeding was commenced when the action of ejectment was brought.

In the case of *Simms* v. *Guthrie*, 9 Cranch, 19, Simms had obtained judgment in an action of ejectment in the Circuit Court on a patent from the State of Virginia against Guthrie. Thereupon Guthrie filed his bill in chancery in the same court setting up a superior equitable title by a prior entry to that on which Simms' patent had issued; and asking an injunction and a decree for the legal title. It was urged as an objection to this bill that there were necessary parties who could not be made defendants in the Circuit Court. But this court said that for omitting to bring in these parties an original bill might be dismissed. That, however, was a bill to enjoin a judgment in the Circuit Court, and the bill must be brought in the same court,

and the court would dispense with the parties who could not be brought in. In *Dunn* v. *Clark et al.*, 8 Pet. 1, where an equitable title was set up by bill in chancery against a judgment at law recovered in a Circuit Court of the United States, the court said: "The injunction bill is not considered an original bill between the same parties as at law." It also said if Graham, the successful party in the judgment at law, had lived, the court might have issued an injunction to his judgment at law without a personal service of process except on his attorney, and it is now the settled practice to order such substituted service on the attorney when the plaintiff in the judgment does not reside within the jurisdiction of the court.

In the case of *Dunlap* v. *Stetson*, 4 Mason, 349, Mr. Justice Story said: "I believe the general, if not the universal, practice has been to consider bills of injunction upon judgments in the courts of the United States, not as original but auxiliary and dependent suits, and properly sustainable in that court which gave the original judgment, and has it completely under control." This language is cited with approval and the point illustrated in the case of *Jones* v. *Andrews*, 10 Wall. 327, and in *Christmas* v. *Russell*, 14 Wall. 69.

The case before us comes precisely within the principle of these decisions.

The bill in chancery is a continuation of the litigation commenced by the action at law, and its object is to enjoin the judgment in that suit and to correct its injustice by an equity proceeding in the same court.

The bar of the statute as to this relief cannot become perfect until two years of inaction have justified a plea of that kind.

*The decree of the Circuit Court is reversed and the case remanded to that court, with directions to overrule the demurrer, and for such further proceeding as to equity belongs.*